700 So.2d 941 (1997)
Loretta TUBBS
v.
Philip Dale TUBBS.
No. 96 CA 2095.
Court of Appeal of Louisiana, First Circuit.
September 19, 1997.
*942 Mark Alan Jolissaint, Slidell, for Appellee Loretta Tubbs.
John T. Holmes, Covington, for Appellant Robert Kuhner.
Before GONZALES and PARRO, JJ., and TYSON, J. Pro Tem.[1]
RALPH E. TYSON, Judge Pro Tem.
This is an appeal from a trial court judgment, imposing sanctions against Robert Kuhner, an attorney who represented the defendant, Philip Tubbs, in divorce proceedings against the plaintiff, Loretta Tubbs.

PROCEDURAL HISTORY
In April of 1993, Loretta Tubbs filed a petition for divorce in St. Tammany Parish against her husband, Philip Tubbs. In this petition, Mrs. Tubbs alleged that (1) the parties had been living separate and apart since November of 1992 with no reconciliation and *943 (2) Mr. Tubbs had committed adultery. Mrs. Tubbs subsequently amended her petition and alleged that the parties had reconciled in February of 1993, but had been living separate and apart since this reconciliation.
On September 1, 1993, Mr. Tubbs, through his attorney, Robert Kuhner, filed a declinatory exception pleading the objection of lis pendens. Mr. Tubbs contended that his petition for divorce pending in Jefferson Parish, entitled "Philip D. Tubbs v. Loretta M. Tubbs," was "an action between the same parties in the same capacities on the same cause of action having the same object" as the action pending in St. Tammany Parish. Therefore, the pendency of the action in Jefferson Parish precluded the prosecution of the action in St. Tammany Parish.
On October 25, 1993, Mrs. Tubbs filed a motion and order to fix the exception of lis pendens for trial, and a request for sanctions in accord with LSA-C.C.P. art. 863 was included. In her motion, Mrs. Tubbs alleged that sanctions were warranted because, under LSA-C.C.P. art. 3955, the exception of lis pendens was not available for LSA-C.C. art. 102 divorces, the only shared cause of action in both proceedings.[2] Mrs. Tubbs further alleged that, through her attorney, Mr. Tubbs had been informed, through his attorney, that the exception of lis pendens had been wrongfully filed but consistently refused all requests to voluntarily dismiss his exception. In conclusion, the motion requested that Mr. Tubbs be sanctioned under LSA-C.C.P. art. 863.[3]
On November 12, 1993, Mr. Tubbs filed a motion under LSA-C.C. art. 102 and alleged that, in the absence of an answer, under the procedures set forth in LSA-C.C.P. art. 3952, a judgment of divorce should be granted. The record reflects that a judgment of divorce was rendered on November 18, 1993, but the judgment was not read and signed until December 21, 1993.
The record also contains a judgment on rule, which dismissed the exception of lis pendens without prejudice at Mr. Tubbs' cost and, in accord with the motion for sanctions and LSA-C.C.P. art. 863, ordered Mr. Tubbs to pay Mrs. Tubbs' attorney's fees in the amount of $400.00, together with all costs of this proceeding. This judgment on rule was rendered November 3, 1993, but not read and signed until January 19, 1994. The judgment indicates that no one made an appearance on behalf of Mr. Tubbs. This judgment on rule was subsequently rescinded by the trial court on March 30, 1994, because it was determined that there was insufficient notice of the hearing. A new trial on the exception of lis pendens and motion for sanctions was set for June 22, 1994.
The parties continued to litigate other incidental matters, including alimony, child support and community property. The record indicates that a hearing was held on June 22, 1994, on the issue of alimony.[4] The trial court's reasons for judgment, dated November 4, 1994, and in its judgment signed on December 5, 1994, do not indicate that the exception of lis pendens and motion for sanctions were addressed by the trial court, even though they had been previously set for a hearing by the court on this date.[5]
On February 9, 1995, a hearing on several pending incidental matters was held in this case. At the beginning of this hearing, the rule for sanctions filed by Mrs. Tubbs was addressed. The trial court stated that it would take the matter under advisement and, at the end of the hearing, the court stated that it was going to deny any motions under LSA-C.C.P. art. 863. The judgment subsequently rendered by the court on March 8, *944 1995, resolving the incidental matters addressed at the February 9, 1995 hearing contained no ruling on the rule for sanctions. However, on April 13, 1995, the court issued written reasons and ruled that Robert Kuhner, Mr. Tubbs' former attorney, should be sanctioned. The court ordered that Mr. Kuhner pay the costs and attorney's fees, in the amount of $500.00, incurred by Mrs. Tubbs in connection with the hearing on the exception of lis pendens. However, the court noted that Mr. Kuhner did not have proper notice of the hearing held on February 9, 1995, so the matter was set for a hearing on March 19, 1996.[6]
At the hearing held on March 19, 1996, the court reiterated its reasons given on April 13, 1995, and sanctioned Mr. Kuhner. The court signed a judgment on April 23, 1996, ordering Mr. Kuhner to pay Mrs. Tubbs' attorney's fees in the amount of $500.00 plus all costs of the proceeding.
It is from this judgment that Mr. Kuhner now appeals.

DISCUSSION
LSA-C.C.P. art. 863 provides, in pertinent part, as follows:
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
* * * * * *
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
* * * * * *
Article 863 applies to the signing of pleadings, motions and other papers, imposing upon attorneys and litigants affirmative duties as of the date a document is signed. Sanchez v. Liberty Lloyds, 95-0956, p. 5 (La.App. 1st Cir. 4/4/96); 672 So.2d 268, 271, writ denied, 96-1123 (La.6/7/96); 674 So.2d 972. The court must determine if the individual, who certified the document purported to be violative, has complied with those affirmative duties. Sanchez v. Liberty Lloyds, 672 So.2d at 271.
The standard of review by the appellate court has been referred to as the "abuse of discretion" standard. Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898, 903 (La.App. 2nd Cir.1990). This standard is nothing more or less than the "manifestly erroneous" or "clearly wrong" criteria used by the appellate courts in reviewing a trial court's factual findings. Sanchez v. Liberty Lloyds, 672 So.2d at 271; Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d 506, 509 (La.App. 4th Cir.1991). Once the trial court finds a violation of Article 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the "abuse of *945 discretion" standard. Sanchez v. Liberty Lloyds, 672 So.2d at 271; Succession of Thomas, 602 So.2d 1108, 1110 (La.App. 1st Cir.1992).
The obligation imposed upon litigants and their counsel, who sign a pleading, is to make an objective reasonable inquiry into the facts and the law. Subjective good faith will not satisfy the duty of reasonable inquiry. Penton v. Clarkson, 93-0657, p. 10 (La.App. 1st Cir. 3/11/94); 633 So.2d 918, 924.
LSA-C.C.P. art. 863 is not to be used simply because parties disagree as to the correct resolution of a matter in litigation. Advocating new or novel legal theories does not trigger a sanction award under article 863. Responsible, albeit adventuresome, lawyers must not be sanctioned in those circumstances, especially when they advise the court of existing law and their considered decision to seek its modification or reversal. Article 863 seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law. (Citations omitted).
Penton v. Clarkson, 633 So.2d at 924-25.
Article 863 does not empower a trial court to impose sanctions on lawyers simply because a particular argument or ground for relief is subsequently found to be unjustified; failure to prevail does not trigger an award of sanctions. First American Bank & Trust v. First Guaranty Bank, 615 So.2d 1060, 1063 (La.App. 1st Cir.1993). The article is intended to be used only in exceptional circumstances; where there is even the slightest justification for the assertion of a legal right, sanctions are not warranted. First American Bank & Trust v. First Guaranty Bank, 615 So.2d at 1063.
In its reasons for granting the sanctions, the trial court noted as follows:
Considering that Mr. Kuhner refused to withdraw the exception, after being advised of the correct law, and after abandoning the Jefferson Parish proceedings, and further considering that the exception was improper as to law, the court finds Mr. Kuhner, and not his former client, should be sanctioned.
Throughout these proceedings, Mrs. Tubbs has argued that sanctions are warranted because the exception of lis pendens was wrongfully filed. Mrs. Tubbs argued that LSA-C.C.P. art. 3955 precludes the filing of an exception of lis pendens in a divorce proceeding. In contrast, Mr. Kuhner argued that the exception of lis pendens might be granted as to the grounds asserted under LSA-C.C. art. 103(2) and denied as to the grounds asserted for divorce under LSA-C.C. art. 102.
The trial court did not agree with Mr. Kuhner's argument or find that his argument had merit but that is not the test to determine whether to impose sanctions under LSA-C.C.P. art. 863. The test to determine whether to impose sanctions is not whether the court finds the arguments have merit, but whether there was the slightest justification for them. Witter v. Witter, 94-0378 p. 4 (La.App. 1st Cir. 12/22/94); 648 So.2d 1052, 1053. While making no finding on the merit of Mr. Kuhner's argument, we find that the arguments were legally justified. See Witter v. Witter, 648 So.2d at 1053. Thus, the trial court was clearly wrong in imposing sanctions under LSA-C.C.P. art. 863.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, imposing sanctions against Robert Kuhner, is reversed. Costs of this appeal are assessed to plaintiff, Loretta Tubbs.
REVERSED.
PARRO, J., concurs with result.
NOTES
[1] Judge Ralph E. Tyson is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In her motion, Mrs. Tubbs maintained that her petition sought a divorce under the provisions of LSA-C.C. art. 103(2) and, in the alternative, under the provisions of LSA-C.C. art. 102. Mrs. Tubbs further maintained that Mr. Tubbs' petition sought a divorce pursuant to LSA-C.C. art. 102.
[3] The motion did not request that Robert Kuhner, Mr. Tubbs' attorney at that time, be sanctioned under LSA-C.C.P. art. 863.
[4] The record contains no transcript or minute entry for this hearing; however, the trial court indicates in its reasons for judgment that a hearing was held on this date.
[5] The December 5, 1994 judgment indicates that Mr. Tubbs appeared with his attorney, Robert Kuhner. However, the record reflects that Mr. Kuhner no longer represented Mr. Tubbs.
[6] The trial court indicated at the hearing on March 19, 1996, that the delay in setting the matter for a hearing was attributable to the clerk's office.